**ORIGINAL**

# In the United States Court of Federal Claims

No. 15-309C
(Filed: October 30, 2015)

**FILED**

**OCT 3 0 2015**

U.S. COURT OF
FEDERAL CLAIMS

```
*************************************
KEVIN P. FRITZ,                      *
                                     *
                Plaintiff,           *     Military Pay; Nonselection for Promotion;
                                     *     Motion to Dismiss; Statute of Limitations;
v.                                   *     Accrual; Effect of Correction Board
                                     *     Decision; Martinez; Motion for Sanctions
THE UNITED STATES,                   *
                                     *
                Defendant.           *
*************************************
```

Kevin P. Fritz, Chesterfield, VA, pro se.

Jessica R. Toplin, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Plaintiff Kevin P. Fritz, proceeding pro se, is a retired major of the United States Army ("Army") Judge Advocate General's Corps.[1] He alleges that the Army Board for Correction of Military Records ("ABCMR") improperly denied his applications for the correction of his military records. Defendant moves to dismiss plaintiff's complaint as untimely, and plaintiff moves for sanctions against defendant for defendant's purported misrepresentation of facts alleged in the complaint. For the reasons set forth below, the court grants defendant's motion and denies plaintiff's motion.

## I. BACKGROUND

Plaintiff was commissioned as a second lieutenant in the Army Reserves in 1984, and then promoted to the rank of first lieutenant in 1986.[2] The following year, plaintiff was recommissioned as a first lieutenant in the Army Judge Advocate General's Corps, entering

---

[1] Although plaintiff is a licensed attorney, he is proceeding pro se because he is not admitted to practice before the United States Court of Federal Claims ("Court of Federal Claims").

[2] The court derives the facts in this section from plaintiff's complaint.

active duty. Plaintiff was then promoted to the rank of captain in 1988 and the rank of major in 1995.

Plaintiff was considered, but not selected, for promotion to the rank of lieutenant colonel by the Fiscal Year 1998 and Fiscal Year 1999 Judge Advocate Lieutenant Colonel Promotion Selection Boards. After he was notified that he had not been selected for promotion a second time, plaintiff reviewed his Promotion Selection Board file and discovered that it contained an unsigned and incorrect Officers' Record Brief. He therefore requested that a Special Selection Board reconsider him for promotion. The Army denied his request. Plaintiff thereafter was considered, but not selected, for promotion by the Fiscal Year 2000 Judge Advocate Lieutenant Colonel Promotion Selection Board. Instead, in 2001, he was selected for continuation on active duty and was continued until October 31, 2007, when he retired at the rank of major.

Prior to his retirement, in January 2003, plaintiff submitted an application to the ABCMR in which he sought the correction of his military records to reflect a promotion to the rank of lieutenant colonel retroactive to his nonselection for promotion by the Fiscal Year 1999 Judge Advocate Lieutenant Colonel Promotion Selection Board. He contended that the Promotion Selection Board's decision was tainted by the erroneous Officers' Record Brief contained in his file and by improper race and gender preference instructions. The ABCMR denied plaintiff's application in September 2003, and notified plaintiff of its decision in October 2003.

Nevertheless, in June 2004, a Special Selection Board was convened to determine whether plaintiff should have been promoted by the Fiscal Year 1999 Judge Advocate Lieutenant Colonel Promotion Selection Board. The Special Selection Board declined to recommend plaintiff for promotion. Plaintiff received notice of that decision on November 21, 2005.

On November 17, 2008, after his retirement, plaintiff submitted a second application for the correction of his military records to the ABCMR. In this application, plaintiff contended that new information revealed that the ABCMR's September 2003 decision was incorrect as it related to the inclusion of an erroneous Officers' Record Brief in his Promotion Selection Board file. Plaintiff further alleged defects in the June 2004 Special Selection Board proceedings. In a March 26, 2009 letter, the ABCMR advised plaintiff that it considered plaintiff's application to be a request for reconsideration, and because the request was submitted more than one year after the ABCMR's original decision, it was untimely. The ABCMR's letter did not address plaintiff's contentions regarding the June 2004 Special Selection Board.

Plaintiff filed a complaint in this court on March 25, 2015, challenging the ABCMR's September 2003 denial of his first application and the ABCMR's March 2009 rejection of his second application. He seeks the correction of his military records to reflect a promotion to the rank of lieutenant colonel retroactive to his nonselection for promotion by the Fiscal Year 1999 Judge Advocate Lieutenant Colonel Promotion Selection Board, and continuing until his retirement, as well as all back pay and allowances that would result from such a correction. Alternatively, plaintiff requests the correction of the records in his Promotion Selection Board

file, the convening of Special Selection Boards to reconsider his promotion to the rank of lieutenant colonel, and, if such a promotion is recommended, all resulting back pay and allowances.

Defendant moves to dismiss the complaint as untimely. Plaintiff moves for sanctions against defendant for defendant's purported misrepresentation of facts alleged in the complaint. The motions are fully briefed and the court deems oral argument unnecessary.

## II. DEFENDANT'S MOTION TO DISMISS

### A. Standard of Review

Defendant moves to dismiss plaintiff's complaint for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). When considering whether to dismiss a complaint for lack of jurisdiction, a court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). Plaintiffs proceeding pro se are not excused from meeting basic jurisdictional requirements, id. at 799, even though the court holds their complaints to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520-21 (1972).[3] In other words, a plaintiff proceeding pro se must prove, by a preponderance of the evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### B. Jurisdiction and the Statute of Limitations

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the existence of subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

---

[3] As noted above, plaintiff is a licensed attorney who served in the Army Judge Advocate General's Corps. He therefore is not a typical pro se litigant. Nevertheless, the court recognizes that "[e]ven a skilled lawyer who represents himself is at a disadvantage in contested litigation" because "[h]e is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." Kay v. Ehrler, 499 U.S. 432, 437 (1991).

The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). Further, "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287 (1983).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2012). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc). In addition, to fall within the court's jurisdiction, any claim against the United States filed in the Court of Federal Claims must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501; see also John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-35 (2008) (providing that the limitations period set forth in 28 U.S.C. § 2501 is an "absolute" limit on the ability of the Court of Federal Claims to reach the merits of a claim).

### C. Plaintiff's Claim Arises Under 37 U.S.C. § 204

In his complaint, plaintiff challenges the ABCMR's September 2003 denial of his first application and the ABCMR's March 2009 rejection of his second application. He contends that had the ABCMR properly acted on his applications, he would have been selected for promotion to the rank of lieutenant colonel. And, with such a promotion, plaintiff would have been entitled to a higher rate of pay and presumably would not have been continued on active duty and then retired. Plaintiff's allegations amount to a claim that he was improperly retired from the Army with a rank lower than the one to which he was entitled. See Martinez v. United States, 333 F.3d 1295, 1314 (Fed. Cir. 2003) (en banc) ("Because [the plaintiff] is entitled to monetary relief only if he can show that he was improperly separated, a suit in the Court of Federal Claims that purports to challenge the correction board decision is in essence an action challenging his separation."). Such a claim arises under 37 U.S.C. § 204, the statute that governs military service members' entitlement to basic pay while they are on active duty. See Smith v. Sec'y of the Army, 384 F.3d 1288, 1294 (Fed. Cir. 2004) ("[A]n action for money arises under [37 U.S.C. § 204] when the decision not to promote the service member leads to the service member's compelled discharge. If, in such a case, the effect of an order voiding the nonpromotion decision would be to give the service member a right to continue in the service at his previous rank, he would have a claim for the pay lost because of his improper separation."); Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("In order to bring [an involuntary separation case under 37

U.S.C. § 204] in the Court of Federal Claims, the plaintiff must allege that because the separation was unlawful, he or she is entitled to the pay that would have been received but for the unlawful action."); Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) ("37 U.S.C. § 204 'confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service'" (quoting Sanders v. United States, 594 F.2d 804, 810 (1979) (en banc), abrogated in part on other grounds by Defense Officer Personnel Management Act, Pub. L. No. 96-513, § 105, 94 Stat. 2835, 2859-60 (1980) (codified as amended at 10 U.S.C. § 628(b) (2000)))); see also Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006) (noting that 37 U.S.C. § 204 is a money-mandating statute).

### D. Plaintiff's Claim Is Untimely

"A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)). Consequently, as the United States Court of Appeals for the Federal Circuit held in Martinez, a claim for back pay arising under 37 U.S.C. § 204 accrues no later than the date on which the service member was separated from the military. See id. at 1303-04; accord Roth, 378 F.3d at 1384 ("[A]n involuntarily discharged or mandatorily retired officer must bring his or her Tucker Act action in the Court of Federal Claims within six years of the date of discharge or retirement.").

After the Army did not select him for promotion to the rank of lieutenant colonel, plaintiff was continued on active duty until his retirement on October 31, 2007. By that date, all of the events fixing the Army's liability for back pay under 37 U.S.C. § 204 had occurred–plaintiff had not been selected for promotion and the Army had released him from active duty. Thus, plaintiff's claim for back pay under 37 U.S.C. § 204 accrued no later than October 31, 2007, rendering his complaint, filed more than six years later, untimely under 28 U.S.C. § 2501.

Plaintiff, seeking to avoid this result, advances two arguments. First, he contends that the holding in Martinez regarding the accrual date of a claim for back pay is inapplicable to his circumstances because the plaintiff in Martinez alleged an improper discharge, and he was retired, not discharged, from the Army. Plaintiff is correct that retirement is different from discharge. However, for the purposes of his present claim, his parsing of terminology raises a distinction without a difference. A claim for back pay under 37 U.S.C. § 204 accrues upon a service member's release from active duty regardless of whether the release was due to retirement or discharge. See, e.g., Roth, 378 F.3d at 1384 ("[A]n involuntarily discharged or mandatorily retired officer must bring his or her Tucker Act action in the Court of Federal Claims within six years of the date of discharge or retirement."); Martinez, 333 F.3d at 1313 ("The cause of action in [the plaintiff's] Tucker Act suit was for the denial of money; that cause of action therefore accrued when he was separated from active duty and his monetary injury began."); Adkins v. United States, 68 F.3d 1317, 1321 (Fed. Cir. 1995) (noting that the plaintiff, a retired

Army officer, was entitled to basic pay under 37 U.S.C. § 204 prior to his retirement, and holding that if the plaintiff's "discharge was voluntary and improper, [his] statutory right to pay was not extinguished, and thus serves as a basis for Tucker Act jurisdiction"); see also Brownfield v. United States, 589 F.2d 1035, 1038-40 (Ct. Cl. 1978) (holding that the plaintiff's claim that he was wrongfully denied a promotion prior to his retirement accrued on the date that he was finally denied that promotion–the date of his retirement at the lower rank); Coon v. United States, 30 Fed. Cl. 531, 540 ("[I]n wrongful denial of promotion cases, the claim accrues at the time the plaintiff is first and finally denied a promotion. . . . By the date of retirement, at the very least, all events had occurred fixing the government's potential liability for a wrongful denial of promotion. . . . [P]laintiff's wrongful denial of promotion claim accrued, at the latest, . . . upon discharge."), aff'd per curiam, 41 F.3d 1520 (Fed. Cir. 1994) (mem.). Plaintiff's contention that the holding in Martinez does not apply to his circumstances therefore lacks merit.

Plaintiff's second argument is equally unavailing. Plaintiff contends that his claim did not accrue until the ABCMR rejected his second application in March 2009. However, it is well settled that in the pursuit of back pay based on an improper release from active duty,

> correction boards have been regarded as a permissive administrative remedy and that an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge. Accordingly, the failure to seek relief from a correction board not only does not prevent the plaintiff from suing immediately, but also does not prevent the cause of action from accruing.

Martinez, 333 F.3d at 1304 (citations omitted); accord id. ("[I]n Tucker Act suits, a plaintiff is not required to exhaust a permissive administrative remedy before bringing suit. As a corollary of that rule, . . . a plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy."); Antonellis v. United States, 723 F.3d 1328, 1333 (Fed. Cir. 2013) ("[T]here is generally no requirement that a plaintiff exhaust remedies with the applicable Corrections Board before filing suit in the Claims Court . . . ."). Further, an application to a correction board does not create a new Tucker Act cause of action with a separate accrual date. Martinez, 333 F.3d at 1312; accord id. at 1311 ("[T]he cause of action for back pay stemming from [the plaintiff's] separation from active duty first accrued on the date of his separation from active duty. It did not accrue for a second time when the Correction Board refused to grant [the plaintiff's] request for relief, including back pay to the date of his separation."), 1313 ("[The plaintiff's] cause of action did not accrue when the Correction Board declined to overturn his separation, because that action did not cause him monetary injury, but merely failed to remedy the injury he had previously suffered."). Because plaintiff was not required to seek relief from the ABCMR, his November 2008 application to the ABCMR neither prevented the accrual of his claim nor tolled the statute of limitations. And, the ABCMR's March 2009 rejection of that application did not create a new cause of action with its own accrual date. Plaintiff's claim accrued on October 31, 2007, the date of his retirement.

## III. PLAINTIFF'S MOTION FOR SANCTIONS

The court's resolution of defendant's motion to dismiss bears directly upon plaintiff's motion for sanctions. In his motion, plaintiff asserts that defendant mischaracterized certain allegations in his complaint. Specifically, plaintiff objects to defendant's use of the term "discharge," because, in fact, he was retired from active duty, and contends that defendant used the term "discharge" to improperly shoehorn the allegations in his complaint into the factual and legal framework of Martinez. Plaintiff brings his motion under RCFC 11, which obligates attorneys to ensure that their filings are not being presented to the court for an improper purpose, and that the representations in those filings are factually and legally sound.[4] See RCFC 11(b). To avoid running afoul of RCFC 11, attorneys must engage in a factual and legal inquiry, reasonable under the circumstances, prior to presenting filings to the court. Id.

As reflected above, defendant correctly relied upon Martinez for the proposition that a claim for back pay arising under 37 U.S.C. § 204 accrues no later than the service member's improper separation from the military. Although Martinez is a military discharge case, its holding is equally applicable to situations in which the improper separation is a retirement rather than a discharge. See Roth, 378 F.3d at 1384 ("[A]n involuntarily discharged or mandatorily retired officer must bring his or her Tucker Act action in the Court of Federal Claims within six years of the date of discharge or retirement."); Martinez, 333 F.3d at 1313 ("The cause of action in [the plaintiff's] Tucker Act suit was for the denial of money; that cause of action therefore accrued when he was separated from active duty and his monetary injury began."); Adkins, 68 F.3d at 1321 (noting that the plaintiff, a retired Army officer, was entitled to basic pay under 37 U.S.C. § 204 prior to his retirement, and holding that if the plaintiff's "discharge was voluntary and improper, [his] statutory right to pay was not extinguished, and thus serves as a basis for Tucker Act jurisdiction"). Thus, defendant's use of the term "discharge"–while technically

---

[4] If a party believes that an opponent violated RCFC 11(b) and should be sanctioned as a result, it may prepare a motion "describ[ing] the specific conduct that allegedly violates RCFC 11(b)" and serve that motion on its opponent. RCFC 11(c)(2). After twenty-one days, the party may file the motion with the court, but only if its opponent has not "withdrawn or appropriately corrected" the alleged violation. Id. The service requirement in this safe harbor provision is strictly construed. See Coastal Envtl. Grp., Inc. v. United States, 118 Fed. Cl. 15, 29 (2014) (citing supporting decisions). Plaintiff served his motion for sanctions on defendant on July 17, 2015. Defense counsel responded to plaintiff by letter, dated July 24, 2015, indicating defendant's position that sanctions were not appropriate. Plaintiff filed his motion with the court on August 3, 2015, seventeen days after serving the motion on defendant. Although plaintiff did not wait twenty-one days before filing the motion with the court, the court will not dispose of plaintiff's motion on this ground, for two reasons. First, defense counsel formally advised plaintiff, in her July 24, 2015 letter, of defendant's position that there was no basis for sanctions, effectively declining the opportunity created by the safe harbor provision to correct the purported violation. Second, defendant did not raise the violation of the service requirement in its response in opposition to plaintiff's motion for sanctions.

inaccurate–is legally inconsequential under the circumstances presented in this case.[5] There is no RCFC 11 violation.

## IV. CONCLUSION

For the foregoing reasons, the court **DENIES** plaintiff's motion for sanctions and **GRANTS** defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction. Plaintiff's complaint is **DISMISSED** without prejudice. No costs. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge

---

[5] Indeed, even courts use the term "discharge" when referring to retired service members. See, e.g., Smith, 384 F.3d at 1296 (addressing the possibility that the plaintiff's retirement could be characterized as an "involuntary discharge[]" (emphasis added)); Adkins, 68 F.3d at 1321 (holding, with respect to the plaintiff, a retired Army officer, that if the plaintiff's "discharge was voluntary and improper, [his] statutory right to pay was not extinguished, and thus serves as a basis for Tucker Act jurisdiction" (emphasis added)); Coon, 30 Fed. Cl. at 540 ("By the date of retirement, at the very least, all events had occurred fixing the government's potential liability for a wrongful denial of promotion. . . . [P]laintiff's wrongful denial of promotion claim accrued, at the latest, . . . upon discharge." (emphasis added)).